FILED
2021 Sep-22 PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| JOSEPH OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-351-GMB |
| | ) | |
| KILOLO KIJAKAZI,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

On April 5, 2016, Plaintiff Joseph Owens filed an application for a period of disability and disability insurance benefits ("DIB") with an alleged disability onset date of January 1, 2012. Owens' application for benefits was denied on July 8, 2016. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on September 4, 2018 and denied Owens' claims on December 17, 2018. Owens requested a review of the ALJ's decision by the Appeals Council, which declined review on January 13, 2020. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of January 13, 2020.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Owens' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Under 28 U.S.C § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 14.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks "DIB") or Supplemental Security Income ("SSI").  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates.  The same applies to citations for statutes or regulations in excerpted court decisions.

84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255

F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).   There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).   A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   Owens bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).   The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P,

App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual
    functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"An affirmative answer to any of the above questions leads either to the next

question, or, [at] steps three and five, to a finding of disability.  A negative answer

to any question, other than at step three, leads to a determination of 'not disabled.'"

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R.

§ 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior

work the burden of proof shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*,

762 F.2d 1516 (11th Cir. 1985)).

Applying the sequential evaluation process, the ALJ found that Owens has not

engaged in substantial gainful activity since his alleged onset date of January 1, 2012

through the date of decision, December 17, 2018. R. 20.  At step two, the ALJ found

that Owens suffered from the severe impairment of degenerative disc disease. R. 14.

At step three, the ALJ found that Owens did not have an impairment or

combination of impairments meeting or medically equal to the severity of any

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.  Before

proceeding to step four, the ALJ determined that Owens had the Residual Functional

Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1527(b) with the additional limitations of standing for only four hours during an eight-hour workday, never reaching overhead with his upper extremities, never climbing ladders, never climbing ropes, never climbing scaffolds, occasionally climbing ramps and stairs, frequently balancing, frequently kneeling, frequently crouching, and occasionally stooping and crawling. R. 16.  The ALJ also found that Owens must "avoid concentrated exposure to extreme heat, extreme cold[,] and humidity" and "avoid all exposure to hazardous conditions, such as unprotected heights, dangerous machinery, and commercial driving." R. 16.  In reaching this opinion, the ALJ stated that he considered Owens' symptoms, objective medical evidence, and opinion evidence. R. 16.

At step four, the ALJ determined that Owens was not able to perform any past relevant work. R. 19.  The ALJ relied on the evidence of a Vocational Expert ("VE") to find that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 19–20.  Thus, at step five of the five-step sequential process, the ALJ found Owens not to be disabled from January 1, 2012, the alleged onset date, through December 17, 2018, the date of the decision. R. 20.

6

## III.  RELEVANT FACTUAL BACKGROUND

Owens was 50 years old on the date of the hearing and 43 years old on his alleged onset date. R. 36.   Owens has at least a high school education and participated in an apprenticeship program in Indiana to train as a millwright. R. 36–37, 44.  After working as a millwright for several years, Owens returned to Alabama and began work as a school bus mechanic for the Jackson County Board of Education. R. 36–37.  He worked as a school bus mechanic for 25 years until June 2012, when he hurt his back. R. 36–37.  Owens testified that he slipped on a greased line and landed on a concrete floor, injuring a vertebra in the base of his back. R. 37. Following his fall in 2012, Owens was compensated by his company through 2014 and was able to receive unused sick pay, along with some workers' compensation benefits. R. 37–38.

On September 26, 2012, Owens visited Highlands Family Medicine with complaints of abdominal pain and reported a history of back surgeries. R. 246. Although the physician did not examine Owens' back and extremities, he determined that Owens lacked any leg pain or swelling, muscle or joint pain, and generally had normal physicality for his age. R. 247.

On January 21, 2013, Owens returned to Highlands Family Medicine reporting back pain following two recent back surgeries. R. 244.  Although Owens initially reported left sided sciatica that moved to left foot numbness, he now

reported lower back pain. R. 244.  His back exam showed an antalgic gait and the physician advised him to follow up with another physician in Huntsville. R. 245.  On May 7, 2013, Owens was prescribed medication for continued back pain and numbness in his right leg. R. 239.

On September 18, 2013, Owens went to the emergency room complaining of abdominal pain, upper body, and an irregular heartbeat. R. 385.  A computerized tomography ("CT") scan reflected moderate discogenic degenerative disc disease at L4–L5. R. 381.  The nurse assessing Owens determined that he had normal extremity strength and was able to obey commands when asked to move parts of his body. R. 392.

On February 6, 2014, Owens went to Highland Medical Center complaining of stomach and shoulder pain. R. 237.  He declined a referral to a pain clinic. R. 237. On June 2, 2014, Owens went to the emergency room complaining of back pain and a possible seizure. R. 340.  The nurse assessing Owens determined he had normal extremity strength. R. 346.

In March and April of 2016, Owens visited the emergency room complaining of coughing and shortness of breath. R. 264–296.  At that time, Owens did not complain of back pain. R. 264–329.  On both visits, Owens had a normal range of motion (R. 288 & 325) and normal extremity strength. R. 280 & 302.

On June 11, 2016, Owens saw Dr. Aldene McClymont for a consultative examination. R. 411.  Owens complained of low back pain, left leg pain, diabetes mellitus, hypertension, COPD, and seizures. R. 411.  Dr. McClymont noted that Owens had some difficulty getting up from a seated position and getting on and off the exam table, and he ambulated with difficulty but without an assistive device. R. 421.  He noted that Owens' gait was abnormal and antalgic. R. 421.  On examination, Owens' back was normal except for only partial straight leg raises while laying down, but normal when sitting. R. 422.  Dr. McClymont found Owen's range of motion in his shoulders, elbows, wrists, knee, ankle, and hands to be normal, but Owens had a reduced range of motion in his hips. R. 423.  Dr. McClymont diagnosed Owens with low back pain, left leg pain, diabetes mellitus, hypertension, COPD, and seizure disorder. R. 423.

Dr. McClymont opined that Owens could stand occasionally during an eight-hour workday, sit occasionally, and walk occasionally. R. 423–24.  He also opined that Owens had a limited ability to bend or stoop and could carry less than five pounds. R. 424.

## IV.  DISCUSSION

Owens contends that the ALJ's findings are not supported by substantial evidence. Doc. 17 at 10.  Specifically, he argues that the ALJ's RFC finding is not supported by substantial evidence because (1) the ALJ failed to give Dr.

McClymont's testimony adequate weight and (2) the ALJ failed to detail the specifics of an alleged "sit/stand option" in the hypothetical posed to the VE. Doc. 17 at 16–17.  The court addresses each of these arguments below.

## A.    Weight of Dr. McClymont's Opinion[3]

Owens argues that the ALJ failed to assign adequate weight to the opinion of his consultative examining physician, Dr. McClymont. Doc. 17 at 14–16.  Owens also contends that the ALJ erred in his rejection of Dr. McClymont's opinion regarding Owens' ability to stand, sit, and lift and carry less than five pounds. Doc. 17 at 9–13.  Based on Dr. McClymont's opinions, Owens contends that the ALJ should have assigned him a sedentary work RFC. Doc. 17 at 16.  The Commissioner argues that the ALJ rightfully gave Dr. McClymont's opinion partial or little weight in determining a light work RFC for Owens. Doc. 19 at 6–7.  The Commissioner is correct.

A physician who has treated the claimant less than twice and lacks an ongoing treating relationship with the claimant is not considered to be a treating physician. *Chaney Everett v. Astrue*, 839 F. Supp. 2d 1291, 1303 (S.D. Fla. 2012).  Non-treating

---

[3] On January 18, 2017, the Social Security Administration published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Reg. 5844). Because these final rules were effective as of March 27, 2017 and Owens applied for benefits before that date, these new rules do not apply.

physicians are not entitled to the same deference afforded to treating physicians. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  However, the ALJ must consider the opinions of non-treating physicians and assign a weight to them. *See McCloud v. Barnhart*, 166 F. App'x 410 (11th Cir. 2006).

Substantial evidence supports the ALJ's decision to give partial weight to Dr. McClymont's opinions regarding Owens' ability to sit, stand, and walk. R. 18. Because Owens met with Dr. McClymont once and he was not a treating physician, his opinion does not deserve special deference.   However, because the record generally supports his opinions about Owens' physical ability, partial weight is proper.  Three months after Owens' injury, when he first saw a physician to establish care, Owens did not have any problems sitting, standing, and walking. R. 246–47. Rather, this physician determined that Owens lacked any leg pain or swelling, muscle or joint pain, and generally had normal physicality for his age. R. 247. Owens' CT scan showed only moderate degenerative disc disease at L4–L5 and there is no notation Owens had any diminished ability to sit, stand, and walk. R. 381.   On the same day, the nurse assessing Owens in the emergency room determined that he was able to obey commands when asked to move parts of his body. R. 392.  In March and April of 2016, Owens' physicians again determined that he had a normal range of motion. R. 288, 325.  Dr. McClymont's examination on June 11, 2016 indicated that Owens had a normal range of motion in his shoulders,

elbows, knees, wrists, hands, and ankles. R. 423. He also noted that Owens' back was normal and his legs were normal when sitting. R. 422. Because Dr. McClymont's opinions about Owens' ability to sit, stand, and walk are consistent with the medical evidence in the record and his own examination, the ALJ was correct to assign partial weight to the opinion. *See King v. Barnhart*, 320 F. Supp. 2d 1227, 1233 (N.D. Ala. 2004) (reversing benefits denial because the ALJ failed to give proper weight to the opinion of a physician whose opinions were consistent with the record).

As to Dr. McClymont's exertion limitation, substantial evidence also supports the ALJ's assignment of little weight to this portion of the opinion. Dr. McClymont opined that Owens could lift and carry less than five pounds. R. 424. The evidence does not support this extreme limitation. For instance, one or two months before Owens met with Dr. McClymont, Owens' physicians concluded that he had a normal range of motion. R. 288, 325. Moreover, in 2013, approximately one year after the alleged onset date, Owens' nurse in the emergency room determined that he had normal extremity strength. R. 392. The same determination was made when Owens visited the emergency room in 2016. R. 288, 302. Because this portion of Dr. McClymont's opinion was not consistent with the other medical evidence, the ALJ was correct to assign it little weight. *See Russell v. Astrue*, 331 F. App'x 678, 681–

82 (11th Cir. 2018); *Arnold v. Soc. Sec. Admin, Comm'r*, 724 F. App'x 772, 779–80 (11th Cir. 2018).

For these reasons, the court finds that substantial evidence supports the ALJ's assignment of partial and little weight to Dr. McClymont's opinions. Therefore, substantial evidence supports the ALJ's RFC assessment of light work.

**B.   Sit/Stand Option**

Owens also argues that the RFC and VE hypothetical "fail[] to specify the frequency with which the claimant must alternate between sitting and standing in the matter." Doc. 17 at 19.   The Commissioner argues that the "common sense" interpretation of the ALJ's RFC finding is that Owens could sit and stand at will. Doc. 19 at 14.   For the following reasons, the court agrees with the Commissioner.

When the ALJ does not specifically state the frequency with which a claimant needs to change his sit/stand position, this reasonably implies that the sit/stand option is at will. *See Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2006); *Cerniglia v. Astrue*, 2010 WL 5093851, 10 (M.D. Fla. 2010) (holding that the ALJ's RFC finding and hypothetical questions implied an at-will sit/stand option).   The ALJ's RFC and VE hypothetical for Owens are consistent with this precedent.   The ALJ appropriately asked the VE if there were jobs available in the national economy for someone with Owens' age, education, work experience, and RFC. R. 61–62. The VE testified that Owens would be able to perform the requirements of light RFC

13

work as an inspector, product maker, and packager. R. 62.  And the employment suggested by the VE explicitly accounted for the ALJ's determination that Owens could stand for only four hours during the eight-hour workday. R. 62.

Moreover, the court rejects Owens' argument that the RFC must expressly state whether the sit/stand option is at will. Doc. 17 at 18.  Owens relies on Seventh Circuit precedent in making this argument (Doc. 17 at 18–19), but as discussed above this position is inconsistent with Eleventh Circuit precedent allowing an implicit at-will sit/stand option. *Williams*, 140 F. App'x at 937.

Finally, the court rejects Owens' contention that the ALJ's failure to "make the findings necessary to prove that [he] can perform the 'sit-stand' light jobs identified by the VE is prejudicial error." Doc. 17 at 19.  This argument improperly places the burden on the ALJ to show that Owens could perform the jobs the VE identified.  Instead, the burden is on the claimant to prove that he is "unable to perform jobs that [the] Commissioner lists." 20 C.F.R. § § 404.920(f)(1), 404.1512(a); *Doughty v. Apfel,* 245 F.3d 1274 (11th Cir. 2001).  Owens did not meet this burden.  The court finds that ALJ had no duty to make additional findings about Owens' ability to perform the light work jobs the VE identified.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards.  Accordingly, the decision of

the Commissioner is due to be affirmed.   A final judgement will be entered separately.

DONE and ORDERED on September 22, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE